And our last case this morning is 16-1679, United States v. Miller. Good afternoon, Your Honors. May it please the Court. My name is Colleen Ramay and I represent Petitioner Ryan Miller in his appeal before this Court. This Court should vacate Mr. Miller's conviction and remand the case because the indictment impermissibly charged him with duplicitous counts of identity theft. Would theft just split from the Second Circuit on the duplicitous indictment issue if we adopted your approach, or is this case somehow distinguishable from Stringer? Your Honor, I believe it would create a circuit split. The Second Circuit has ruled that the proper way of charging aggravated identity theft is by instance of possession, no matter the number of pieces of identification. However, the plain language of the statute does indicate that a single possession of a single piece of information should be the manner of charging the offense. The statute reads that it makes it a crime to knowingly transfer, possess, or use without lawful authority a means of identification of another person. And it goes on to define means of identification as any name or number that may be used alone or in conjunction with any other information to identify a specific individual. This strongly suggests that Congress intended each means of identification to be charged independently. Now, the District Court indicated that Miller resumed his identity theft activities when he was released from his unrelated jail term in Texas. Does that mean that he still possessed or retained access to the notebook containing those 200 names and social security numbers while he was in prison? How else would he have committed his identity theft activities once he was released? That is a very good question, Your Honor. You got a very good answer. My second argument is that even if this Court decides that the indictment was not duplicitous, it should remand this case for resentencing. Because by adding two points, it is true that the facts were stipulated that this mail fraud scheme, including the identity theft, began in 2007 and continued through December of 2009. So I think that that is a good factual question about when he possessed the notebook and whether or not he possessed it prior to and then subsequent to his incarceration in 2008 in Texas. But the facts that were established were that he possessed it in Chicago and used the information inside to open credit card accounts and P.O. boxes and obtain these credit cards and then go to ATMs in Chicago. So there is no real factual basis for the idea that he committed any part of this scheme while he was incarcerated in a Texas prison on an unrelated sentence. Therefore, the addition of two criminal history points to his underlying five criminal history points, I believe, was erroneous because there is no actual support in the record for the idea that he committed part of his scheme while serving a criminal justice sentence. This augmented his guidelines range from what it should have correctly calculated, it should have been 18 to 24 months, it was calculated at 24 to 30 months, and accordingly it affected his substantial rights as there is no indication that the district court would have settled on the same sentence regardless of the mistake. Therefore, we are asking the court to, our alternative request for relief is to ask the court to remand for resentencing in light of the correct guidelines range. Judge Robner, did I answer your question? I'm not sure if that's what you were getting at. I'm left with the feeling that we just don't know. I would agree. The facts are not particularly established and part of the problem is that I guess this wasn't contested in the district court, so that record is not particularly well established. My understanding of what happened was that he was... It's very nice of you to ask if it answered my question. I just wanted to make sure that I was understanding correctly. Thank you. I believe that what happened was that Mr. Miller was found with the aggravated identity theft. The 200 pieces of information contained in one notebook was found with him and he possessed it at the time that these charges were... The scheme was discovered and then there was probably additional information, so I'm not sure that he possessed those the entire time. That particular notebook. Going back to my first point, Mr. Miller suffered prejudice due to the duplicitous nature of the charging document as the indictment does not adequately protect him from due process... I'm sorry, double jeopardy violations in the future. He's not protected from future prosecutions for identity theft arising from the same set of circumstances. And he did not have sufficient notice of all of his potential charges and liability in order to adequately prepare a defense or negotiate a plea agreement. Unless the court has any other questions, I will reserve the rest of my time for rebuttal. Thank you. May it please the court. My name is Georgia Alexakis and I represent the United States. This court should affirm the defendant's convictions and sentence after modifying the judgment. And I'd like to address the district court's assessment of two criminal history points of the defendant first. And those are the two criminal history points the district court assessed based on the fact that the defendant served a term of incarceration in 2008, which was squarely during the pendency, during the duration of his scheme. The scheme began in July of 2007 and continued through December of 2009. The defendant set that scheme into motion. And during the defendant's argument or appellant's argument, there was focus on only one aspect of that scheme. And that was the possession or the unlawful possession of means of identifications belonging to other individuals. But the scheme was much broader than that. The scheme involved using those means of identifications to fraudulently apply for credit cards, to then open up fraudulently mailboxes in the names of the defendant's victims, and then to cause credit card companies or financial institutions to mail those credit cards and then subsequent account statements to the fraudulently opened mailboxes. So there's a host of activities that took place as part of the mail fraud scheme, not simply the possession of the unlawful possession of means of identification. Which part of the offense did Miller commit while he was incarcerated in Texas? On plain error, you might be able to rely on Miller's general concession that the scheme continued while he was in prison. But would that be enough under a less generous standard of review? Judge, I believe that it is enough both under a less generous standard of review, but I also believe that the defendant admitted to more than simply the fact that he was in prison during the course of the 2007 through 2009 scheme overall. And in particular, the factual basis of his plea agreement includes language that he caused the credit cards and account statements that he had fraudulently opened to be mailed to mailbox addresses that the defendant controlled. And so earlier when I referenced the fact that the scheme involved more than just the possession of the unlawful possession of means of identifications, it's this type of activity in particular, the fact that I had in mind in terms of activities that were taking place when the defendant was incarcerated in a Texas prison. He set into motion a scheme in which he fraudulently obtained credit cards, and then there was a slew of activity that followed from that activity that continued as he admitted in his plea agreement through 2009. Well, would you please respond to the point raised in the reply brief that the government is improperly relying on allegations in the indictment to establish that Miller's conduct on the scheme continued while he was in prison on the unrelated charges? Yes, Judge. So the government's response brief did point to language in the indictment, but the record also includes language in the factual basis of the defendant's plea agreement. And you can find the specific language on page 20 of the defendant's appendix. And so there, it's not simply an allegation on the part of the government, but an admission on the part of the defendant that he caused account statements for credit cards that he had fraudulently opened to be sent to mailboxes that he controlled, all of which was part of the ongoing scheme. And so in light of that activity that occurred while the defendant was in prison in 2008, the district court did not plainly err in assessing two criminal history points to the defendant's criminal history score when calculating his guidelines. I'd also like to address the defendant's duplicity argument. The indictment in this case is not duplicitous. This is a case involving a defendant who possessed, on a single occasion, on a single day, a notebook that contained multiple means of identification. And given the singular nature of this transaction, that it was simultaneous possession of multiple means of identification in an undifferentiated manner, the government properly charged the defendant with the single violation of the identity theft statute and then a single violation of the aggravated identity theft statute. For the government to, in the alternative, what the government would have done, or could have done, I suppose, is charge him with hundreds of individual counts pertaining to each of the individual means of identifications that were found in that notebook. But at the end of the day, what happened is that the defendant pleaded guilty to a particular, in pleading guilty to count six, pleaded guilty to the possession of a means of identification tied to a specific individual. And so at the end of the day, even if there were a deficiency in the indictment, and to be clear, the government does not believe that the indictment is duplicitous, but even if there were an error, the party's plea agreement cures any such error because, again, the defendant pled guilty to a specific count and a specific individual with respect to that count. What's the answer to the unanimity question that was sort of left hanging in the district judge's opinion? The unanimity question with respect to? To the duplicity argument. I mean, that's one of the concerns in duplicity doctrine. That as to whether or not duplicity can be cured through unanimous finding by the jury. I want to make sure I understand your question correctly. Well, is the jury required to be unanimous on which means of identification was possessed or which predicate offense it was possessed in connection with? There's two different questions in this statutory scheme. Correct. And the second question, I think, is one that the government avoided by amending the indictment, and so I haven't briefed that issue for purposes of the appeal. For purposes of the first question, I do believe that given the facts here, there would need to – well, I actually – If you don't want to commit yourself, that's fine. Well, and the reason why I paused, Judge, is because the statute talks about possession and use, and it has a variety of different means of being able to violate the statute. And so here, where you have a possession case, and the possession was a single notebook on a single occasion, I don't know that a jury would necessarily need to find that to find a particular victim unanimously. The answer might be different in a use situation. And so if there are no further questions from the court, I would respectfully ask that, again, the court affirm the defendant's convictions in the sentence after modifying the judgment to reflect voluntary participation in the inmate financial responsibility program. Thank you. Thank you. Ms. Romijn. You've got three minutes left. Okay. Thank you. Just one quick point I wanted to make on rebuttal. With respect to what is in the plea agreement on the sentencing issue, we have – as counsel – I respectfully disagree with the government with respect to what the plea agreement establishes. On page 20 of the appendix, which is page 4 of the plea agreement, it does note that Mr. Miller opened mailboxes in the names of victim individuals, knowing that the victims did not know of or consent to his having opened the mailboxes in their names, and he knew that he intended to have fraudulently obtained credit cards sent to the mailboxes that he had opened in the victims' names and not sent to the victims' true addresses. Then it goes on to state in particular that Mr. Miller caused the credit cards and account statements that he had fraudulently opened with Citibank, Capital One, and Bank of America to be mailed to the mailbox addresses that he controlled in Chicago. On or about December 28th of 2007, Defendant Miller received a Capital One credit card ending in 0259 in the name of victim B in a mailbox he had opened in the name of victim B at a UPS store at 40 East Chicago Avenue, Chicago, Illinois. So this does indicate that, yes, he did engage in this conduct and those – he caused credit cards to be sent to these mailboxes, but it does not indicate that this happened during the time in 2008 where he was incarcerated. While it may have happened before and after, there is nothing in the factual basis of the record that shows that it happened during the time. The other quick – one other quick point that I wanted to make was that with respect to the duplicity argument, it appears clear to me one of the things that the government is required to prove in an aggravated identity theft situation is that the victim is a real person. And so to follow up on Your Honor's question of whether or not the jury needs to be unanimous, we would need to – the jury would need to find that whatever victim was a real person and that suggests that they would need to find – there would need to be unanimity, which this indictment does not provide for. Do you have any other further questions? Thank you. Thank you, Your Honor. Thanks to both counsel. The case is taken under advisement and the court will stand in recess. Thanks to all.